SMITH *v.* CITY NATIONAL BANK OF LANSING.

1. BANKS AND BANKING—LOST DRAFT—EVIDENCE.

In an action against a bank for money received for the use of plaintiff, evidence that the defendant was instructed to forward the amount received to an address given by plaintiff; that in accordance with the usual practice of the bank, an employee placed the draft in a letter which was placed among a number of others and tied into a bundle that was later deposited in the post office; that the envelope was addressed to plaintiff at the place mentioned in his instructions; that he was absent from that place on the day when the letter would probably have arrived, that the persons present at such time did not receive the letter and the draft had never been presented for payment to the drawee, *held*, to present an issue of fact for the jury as to the proper mailing of the draft.

2. SAME—EVIDENCE—LETTERS—BURDEN OF PROOF.

The burden of establishing the mailing of the draft was on the defendant.

3. SAME—COURSE OF MAIL.

In determining the issue, plaintiff was entitled to the benefit of the probabilities and inferences connected with and growing out of the United States mail service and ordinary experience.

Error to Ingham; Wiest, J. Submitted June 18, 1914. (Docket No. 28.) Decided July 24, 1914.

Assumpsit by Warren Smith against the City National Bank of Lansing for money received to plaintiff's use. Judgment for plaintiff. Defendant brings error. Affirmed.

*E. C. Chapin,* for appellant,

*Gardner & Hood,* for appellee.

It is admitted that money was paid into the defendant bank for plaintiff, subject to his order, and that

the bank received his order (check) to pay the money to himself with the instruction, "send in care of Ypsilanti Milling Company, Ypsilanti, Mich." The bank offered testimony tending to prove that upon receipt of this order it made its draft for the money upon the First National Bank of Detroit, Mich., in favor of plaintiff, inclosed the same in a letter of remittance, and deposited letter and draft, in a sealed stamped envelope, in the post office at Lansing, addressed to plaintiff according to his instruction. Upon the upper left corner of the envelope was printed a direction to return the letter to the bank after five days. Plaintiff's check, stamped paid, the books of the bank, and the testimony of various clerks and servants, and the usual course and custom of the business, support this view. The testimony also tends to prove a search at the bank, when nonreceipt of the draft was claimed, among its papers, and even among its waste and discarded papers, which are preserved in sacks for the period of one year, without discovering any trace of the alleged missing draft or letter. The servant of the bank who wrote the letter of remittance and placed it and the draft in the envelope and addressed the envelope, and who daily, personally, carried to and deposited the outgoing mail in the post office, testified to an independent recollection of the transaction from the fact that the instruction of plaintiff gave an address different from the one before employed by him, to which the bank had previously sent letters. He had no independent recollection of depositing the particular letter in the post office. The Detroit bank, the drawee, was notified not to pay the draft. It has not been presented for payment. Testimony for the plaintiff tended to prove that, having sent his instructions to the defendant bank respecting the money, he left Ypsilanti and was absent for several days. John Trufant was president, and Lida, his wife, was secretary, of the Ypsilanti Milling Company. The mail

for that company was delivered by government carrier at 8:30 a. m. and 12:30 and 3:30 p. m., whose custom it was to place it on the top of the office desk of the company. In June or July, 1912, Mrs. Trufant spent some time in the office in the mornings, but was never present when the mail was delivered. Mr. Trufant was usually present when the 8:30 delivery of mail was made, but paid not much attention to the noon and afternoon mail. Mr. Trufant testified that on account of advices from plaintiff he was looking for a letter for him to come from defendant bank while he (plaintiff) was in Northville, and that while he was in Northville no such letter came, to his knowledge. His wife gave like testimony. Testimony tended to show that no such letter had been delivered at the Trufant home, where plaintiff was staying and made his home.

Counsel for defendant relies upon the fact that Mr. Trufant appears to have been the only person who had any knowledge concerning letters delivered to the milling company, and that his testimony covers only the time when plaintiff was absent from Ypsilanti. The witness said:

"I was looking for a letter for him from said bank while he was in Northville.
"Q. Did any such letter come to him from the City National Bank of Lansing while he was at Northville?
"A. No, sir.
"Q. Did any such letter come to the home, to your knowledge?
"A. No, sir."

Defendant declined to pay plaintiff the money unless indemnified by bond. See 3 Comp. Laws, §§ 10183, 10184. Plaintiff sued for the money, and not on the lost instrument.

The principal question of fact submitted to the jury was whether defendant mailed the draft to plaintiff, the instruction being that, if defendant had not satis-

fied them of that fact, plaintiff might recover, if he never received the draft; if not so satisfied, plaintiff could not recover, without filing a bond. A verdict for plaintiff was returned, and, a motion for a new trial having been denied, judgment was entered on the verdict.

It is assigned as error that the court erred in refusing to give certain requests to charge, each of which directly or by necessary implication asserts the vital proposition that the proof establishes the fact, *prima facie*, that the draft was duly mailed. Error is assigned upon the refusal to grant a new trial upon the ground that the verdict is opposed to the weight of the evidence.

While plaintiff does not admit some of the conclusions of law stated or implied by the court in the charge to the jury, he does admit that as the case was tried, and as the jury was instructed, the vital question was whether defendant mailed the draft to the plaintiff. Upon this point he contends there was a question of fact for the jury, although insisting that upon the undisputed facts a verdict should have been directed for the plaintiff.

OSTRANDER, J. (*after stating the facts*). If the question of the mailing of the draft was for the jury, the judgment may be affirmed, without examining other points urged upon our attention by the plaintiff, appellee. The affirmative of the issue is with the defendant. Other testimony than that above referred to fairly tends to support the contention that the draft was never received at Ypsilanti. As opposed to the testimony of the bank's agents, the jury had the testimony that the letter did not reach its destination, that it has not been returned to the bank, and has not been presented for payment. The defendant relies, properly enough, upon a custom in respect to mailing letters. Plaintiff is entitled, in settling the question,

to the benefit of probabilities and inferences connected with and growing out of the United States mail service and the ordinary experience of mankind. Assuming that the interested parties and their witnesses are equally honest, the question must be settled, for the purposes of this case, as one of probabilities. Usually such questions are for the jury, and after an examination of all the testimony we cannot say it is so much more probable that the letter was mailed that the court ought to have directed a verdict for defendant, which in effect was the ruling sought by the requests which were refused.

The judgment is therefore affirmed.

BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred. McALVAY, C. J., did not sit.